**Elaine PETERS, Plaintiff-Appellant,**

v.

**JEFFERSON CHEMICAL COMPANY, Defendant-Appellee.**

No. 74–2752.

United States Court of Appeals, Fifth Circuit.

July 24, 1975.

Bobby J. Nelson, James M. Simons, Cameron M. Cunningham, Austin, Tex., for plaintiff-appellant.

John A. Sieger, William S. Clarke, Houston, Tex., for defendant-appellee.

Before GOLDBERG, CLARK and GEE, Circuit Judges.*

CLARK, Circuit Judge:

The plaintiff sought relief in the form of back pay and reinstatement under Title VII of the Civil Rights Act of 1964,

---

* At oral argument it first was made known to the panel that the defendant-appellee Jefferson Chemical Company was a wholly owned subsidiary of Texaco, Inc. Although this fact was known to both parties litigant, neither disclosed it in the Local Rule 13(a) Certificates filed in this cause. This belated revelation necessitated the recusal of Judge Goldberg. He did not participate further in this cause. Judges Clark and Gee, a quorum of the court under 28 U.S.C. § 46(d), proceeded to consider and decide the cause.

42 U.S.C. § 2000e *et seq.* alleging employment discrimination based on sex. Her contention was that the defendant, Jefferson Chemical Company, refused to transfer or promote her and terminated her employment because she was female. The judge to whom the case was tried found no discrimination and denied the relief sought. Although the court may have erred in certain evidentiary rulings, its ultimate findings were not affected and we affirm.

Prior to going to work for Jefferson, Elaine Peters, who had a B.S. degree in chemistry, had worked as an industrial chemist for five years. In 1959 she was hired by Jefferson to work in the company library. In 1960 her title was changed from Research Chemist (Library) to Research Librarian. She remained in this library work assignment for 11½ years until 1971, at which time her employment with Jefferson was terminated along with other employees in a general lay-off. During the time Ms. Peters was employed, the company organizational structure identified a position of Senior Research Librarian which was never filled. From time to time during her employment, Ms. Peters received substantial merit raises and the company conceded that she was considered a good employee. Beginning in 1964, Ms. Peters made oral requests to various persons in authority at Jefferson for a transfer out of the library into one of the chemical divisions. Although the company had no formal transfer policy, the proof showed that other employees were transferred from one division to another. Seven of the eight positions which arose from 1965–1970 for which Ms. Peters was qualified were filled by males.

Jefferson's past record tended to show limited opportunities for professional women, since only six such women had been hired since 1949 though numerous males had been employed in this category. Jefferson had never employed a woman supervisor. A review by the Atomic Energy Commission in 1970 rated the policies of Jefferson in hiring and promoting minorities as unsatisfactory. The only two professional women in its employ were terminated in the February, 1971 lay-off, representing 18% of the total number of employees laid off. Females, including clerical staff, represented only 6.9% of the total 234 employees of Jefferson.

In December, 1970, Ms. Peters filed a complaint with the Equal Employment Opportunities Commission within 90 days of the refusal of her last request for a transfer. The complaint was investigated, and she was given notice of her right to sue. She was terminated by Jefferson in February, 1971.

Ms. Peters contends that she was discriminated against on the basis of her sex, because she was never promoted to the vacant position in the library or transferred out of the library to a position which offered more possibilities for promotion and from which she would not have been terminated. She also maintains that sex was the basis for her termination. In sum, Ms. Peters offered evidence (1) of her repeated requests for transfer, (2) that other transfers were permitted, (3) that the positions for which she was qualified went almost exclusively to males, and (4) that females suffered disproportionately in the layoff program.

The complainant in a Title VII action must carry the initial burden of proving a prima facie case of discrimination. However, this burden does not include proof of a discriminatory intent by the employer, Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972). It only encompasses a demonstration that the effect of its employment practices was discriminatory. *See* Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The criteria for establishing a prima facie case were delineated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The complainant must belong to a protected minority, ap-

ply for a job, be qualified, be rejected, and further applicants be sought.

Ms. Peters proved all but the last of these enumerated criteria in connection with her requested transfer in December, 1970. *McDonnell Douglas* makes it clear, however, that these factors are not wooden absolutes. "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required [by the complainant] is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824. *See also* United States v. Hayes International Corp., 456 F.2d 112 (5th Cir. 1972); United States v. Jacksonville Terminal Co., 451 F.2d 418 (5th Cir. 1971); Marquez v. Ford, 440 F.2d 1157 (8th Cir. 1971). Several factors counterbalance the fact that Jefferson did not try to fill this particular position after denying it to Ms. Peters. The decision not to fill the position came *after* her rejection. In addition, there was testimony that the plaintiff was not transferred because the position carried a lower salary, and we have held that the Civil Rights Act provides for equal opportunity to select and compete for a job notwithstanding its lower pay or other disadvantages. United States v. Hayes International Corp., 456 F.2d 112, 118 (5th Cir. 1972). The explanation given by the Director for not transferring Ms. Peters was that he felt that the future of the company was unsure and therefore decided not to fill the position with anyone, yet two other positions for which Ms. Peters was qualified were filled subsequently. We pretermit any decision on whether this evidence, together with the statistical showing of Jefferson's past performance in hiring professional women and the several specific instances of discriminatory refusal to transfer alleged by Ms. Peters, would have been enough to establish a prima facie case, despite the lack of proof as to the precise final criteria involved in *McDonnell Douglas* that another was hired for the position she was refused in December, 1970.

The legal effect of recognizing that a prima facie case had been proven by the plaintiff would have been to shift the burden to the defendant to come forward with evidence that a legitimate nondiscriminatory reason existed for its nontransfer and termination actions. *See* McDonnell Douglas Corp. v. Green, *supra.* Since the court's opinion makes it clear that the full merits of Ms. Peters' proof and the company's defense were considered in reaching the conclusion that Ms. Peters was not the victim of employment discrimination based on her sex, if there was error in classifying her proof as less than sufficient to cross the prima facie threshold, it was harmless. The district court did not stop its analysis of the proof with its conclusion that Ms. Peters had failed to meet her prima facie burden. The rule is that "[o]nce the plaintiff has made out his prima facie case we look to the defendant for an explanation since he is in a position to know whether he failed to hire a person for reasons which would exonerate him." Hodgson v. First Federal Savings and Loan Association, 455 F.2d 818, 822 (5th Cir. 1972). This is precisely what the court did. It found that Jefferson had established legitimate non-discriminatory reasons for its actions regarding Ms. Peters. There is more than adequate support for the conclusion that Jefferson had legitimate reasons for its actions with regard to Ms. Peters.

It is unclear from the record whether the EEOC investigative files were finally admitted as evidence and whether they were considered. However, the trial court's reluctance to permit their introduction is plainly apparent. Such reluctance was unwarranted. This court has found that these files are admissible and can be highly probative. Smith v. Universal Services, Inc., 454 F.2d 154 (5th Cir. 1972). The judge also incorrectly opined that statistics have little probative value in a non-class action. *See* McDonnell Douglas Corp. v. Green, *supra*, 411 U.S. at 805, 93 S.Ct. 1817; and Jones v. Lee Way & Motor Freight,

Inc., 431 F.2d 245 (10th Cir. 1970). Each of these statements might indicate an erroneously limited appraisal of the fact situation being judged. However, our review of the entire record satisfies us that the reasoned decision described in the court's written opinion weighed all proper proof and was not clearly erroneous.

As to her claim that Jefferson failed to promote her because of her sex, the judge credited Jefferson's assertion that the only available position, Senior Research Librarian, was a paper position on an organizational chart which the company did not intend to fill. Jefferson also pointed out that Ms. Peters' supervisor, a male, was never promoted. The court had adequate support for its conclusion that the library was a static place in which to work, regardless of sex.

More complex questions are raised with regard to the failure of the company to transfer Ms. Peters to another division. It is no answer to say the company had no formal transfer policy. Transfers of other employees were made from time to time on oral request. The persons to whom Ms. Peters orally applied at various times testified to her requests for transfers and that she was qualified for the positions she requested. However, despite these requests it is clear that Ms. Peters initially applied for her library position, accepted it and appeared to be content there for several years. She indicated in her annual reports throughout the duration of her employment that she desired a promotion, but that she was content to remain in the library and wanted to learn more library skills. Her explanation for the apparent inconsistency of wanting a transfer and expressing satisfaction with her library job assignment was that she did not want her library supervisor to know of her desire for a transfer to avoid aggravating their strained relationship.

The first instance of alleged discriminatory refusal to transfer occurred in 1964 when Ms. Peters was denied a transfer into Technical Services, Urethanes, because heavy weight lifting was required. The company established that Ms. Peters was refused this position, not because of any stereotyped presumptions as to the disability of her sex, but because of her own personal history of back problems. *Cf.* Weeks v. Southern Bell Telephone and Telegraph Co., 408 F.2d 228 (5th Cir. 1969); and Long v. Sapp, 502 F.2d 34 (5th Cir. 1974). In *Weeks* we noted that the principle of non-discrimination requires that individuals be considered on the basis of individual characteristics, not on characteristics generally attributed to the group. 408 F.2d at 235. Individual, not group, characteristics were the basis for refusal to transfer Ms. Peters in this instance.

Ms. Peters' next complaint is that a man hired into a sales division position was less qualified for the position than she. However, the testimony showed that while the man employed was not as well-educated, he was hired because his experience and ability in sales indicated a superior potential for job performance.

The trial court found that Jefferson was justified in hiring men for each of the positions which Ms. Peters sought. It determined that the three men hired before 1967 were more qualified than Ms. Peters. The first three men held M.A. degrees in chemistry and had comparable industrial experience to that of Ms. Peters. The third man hired had less industrial experience, but was better educated—he held a Ph.D. in chemistry. The judge found that it was not until after 1967 that Ms. Peters' paper qualifications were as good or better than the males hired. However, since Ms. Peters had been away from laboratory work for ten years, the judge credited testimony that laboratory skills atrophy after a long period of time and found that she was not in fact as qualified as the men subsequently hired. This finding is substantiated by Ms. Peters' testimony that she was unable to obtain a job as a research chemist after leaving Jefferson

because she had been away from the laboratory too long. Finally, we note that the legally insufficient testimony that Ms. Peters was not hired in the position she applied for in December, 1970 because the salary was lower was supplemented by proof from the company Director who testified that he did not fill the position because he was unsure of the future of the company.

In Griggs v. Duke Power Co., *supra*, 401 U.S. at 436, 91 S.Ct. at 856, the Court observed that "Congress has not commanded that the less qualified be preferred over the better qualified simply because of minority origins." We cannot say that the court clearly erred in finding that failure to transfer Ms. Peters was based on nondiscriminatory reasons.

Valid evidence also supports the court's determination that sex discrimination did not taint Jefferson's decision to terminate Ms. Peters. The library was considered a non-essential service position, and Ms. Peters, having the least seniority and least essential skills was the proper person to terminate. Her contention that had she been transferred to a more vital area, she would not have been laid off is not only pure speculation, but also speculation without basis in view of our affirmance of the district court's findings that her nontransfer was proper. Lay-offs occurred in many departments, and men who had been employed longer than Ms. Peters in more vital areas than the library were also terminated.

Therefore, even if the trial court erred in finding that Ms. Peters had not established her prima facie case, the judge was not clearly erroneous in finding that case was rebutted and her termination and the company's failure to promote or transfer her were not based on sex discrimination.