Margaret Harris **DOWNEY**

v.

**A. H. BELO CORPORATION, a/k/a Dallas Morning News.**

No. CA 3–74–485–C.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 23, 1975.

Thomas H. Dixon, Johnston & Dixon, Dallas, Tex., for plaintiff.

George C. Dunlap and Bowen L. Florsheim, Smith, Smith, Dunlap & Canterbury, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

The case now before the Court involves only two ultimate issues. First, Plaintiff contends that she was denied employment in Defendant's outside advertising sales department because of her sex, and second, she contends that Defendant retaliated against her in various ways, including discharge, because she filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (hereinafter called the "EEOC"). As will be shown below, Plaintiff wholly failed to sustain her burden of proof as to either part of her case and judgment should be for Defendant in this cause.

Plaintiff was employed by Defendant as a classified advertising telephone salesperson on three separate occasions, those being February 15, 1966 until August 19, 1966, April 13, 1967 until October 21, 1968, and finally from October 11, 1972 until March 13, 1973. The Plaintiff's first employment was terminated when she resigned to return to secretarial work, and in 1968, Plaintiff resigned as a result of a dispute with one of her supervisors. The third time, Plaintiff was discharged because of excessive absences and tardiness. The events resulting in Plaintiff's lawsuit occurred shortly before, during, and after the third time in Defendant's employ.

On August 28, 1972, Plaintiff telephoned Mr. Marvin Veal and inquired of him whether Defendant had any jobs available in its outside advertising sales department. Mr. Veal, who is in charge of hiring for that department, informed Plaintiff that no vacancies existed for outside salespersons. Mr. Veal also informed Plaintiff that she was not qualified for the position in any event because she did not have a college degree. Although there is some conflict in the testimony of Mr. Veal and Plaintiff, it seems clear that Plaintiff did not press the matter any further. Plaintiff then inquired of Mr. Veal as to whether there were any jobs available in the telephone sales room and was told that she would have to contact Ruth Johnson concerning employment in that department. Plaintiff did not contact Marvin Veal again concerning employment in outside sales, nor did she ever apply formally for a job in that department.

Following this telephone conversation, Marvin Veal told Ruth Johnson that Plaintiff might seek employment in the telephone sales room. Veal also told Johnson that there had been trouble with Plaintiff during her previous employment, with Defendant and that she should take that into account if Plaintiff did contact her for a job. In October, 1972, Plaintiff did contact Ruth Johnson by telephone and requested a job in the telephone sales department. Ruth Johnson testified without contradiction, that although she recalled Veal's comments, Plaintiff was hired since people were needed in the telephone department.

Plaintiff started work as a telephone sales person on October 11, 1972. She was originally assigned to automobile advertising sales, but, on January 22, 1973, was transferred to employment advertising to replace a departing employee. She remained in the employment sales division until her discharge on March 13, 1973.

On February 27, 1973, Plaintiff filed charges with the EEOC against Defendant, alleging, among other things, that Defendant had refused to hire, promote or transfer her into its outside sales department because of her sex. On March 13, 1973, Plaintiff was discharged by her supervisor, Ruth Johnson, for excessive absenteeism and tardiness. Plaintiff also filed EEOC charges alleging various acts of retaliation by Defendant for having filed charges on February 27, 1973, including her discharge.

The foregoing is the basic framework within which this case developed. Details

**1372**

of the evidence will be more fully developed below in connection with the specific issues to which those issues relate.

## I. THE OUTSIDE SALES JOB

### A. *General*

■ The recent decision of the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), establishes the standards required for a Plaintiff's prima facie case in an individual Title VII action. Adapting those standards to this case, Defendant submits that Plaintiff is required to show the following by a preponderance of the evidence:

1. That Plaintiff is a female.
2. That Plaintiff applied for a job in Defendant's outside sales department for which she was qualified.
3. That a vacancy existed and Defendant was seeking applicants therefor.
4. That despite her qualifications, Plaintiff was rejected.
5. That after Plaintiff's rejection, Defendant continued to seek applicants with Plaintiff's qualifications.

It is important to understand that Plaintiff must show the foregoing to establish a prima facie case. The burden then shifts to Defendant to articulate some legitimate non-discriminatory reason for the refusal to employ. The burden then shifts back to the Plaintiff to establish in some way that Defendant's reasons were only pretextual and that sex discrimination was the real reason. *McDonnell Douglas Corporation v. Green*, supra at 804, 93 S.Ct. 1817. See *Peters v. Jefferson Chemical Co.*, 516 F.2d 447 (5th Cir. 1975).

### *Plaintiff's Showing*

■ The evidence shows that Plaintiff contacted Marvin Veal by telephone on August 28, 1972. While the witnesses did not recall the exact date, it is established by the reference letter which Veal testified he wrote the same day of the conversation in question. During that conversation, Plaintiff inquired as to whether there were any job openings in Defendant's outside advertising sales department. Veal informed her that there were no vacancies at that time, and that there was a college degree requirement for employment in that department. Plaintiff then asked if there were any openings in the telephone sales department and Veal referred her to Ruth Johnson, who did all hiring in that department. Plaintiff also asked Veal for a reference letter, which Veal prepared and sent to Plaintiff the same day. Plaintiff never contacted Veal again, either by phone or otherwise, as to any openings in the outside sales department and never again discussed the matter with Veal. The foregoing description of the telephone conversation is without real dispute in the record.

Plaintiff contends that Veal refused to consider her for the outside sales department on August 28, 1972, because of her sex. The Court has concluded that the Plaintiff failed to carry her burden of proof as to this issue, either to establish a prima facie case or to refute the evidence produced by Defendant.

In regard to the initial hire issue, Plaintiff's August 28, 1972, inquiry was sufficient to meet the *McDonnell Douglas* standard of a job application. However, with regard to Plaintiff's allegations of failure to promote or transfer, Plaintiff did not meet the requirement.

The first real issue with regard to the initial hire question is whether a vacancy in outside sales existed on August 28, 1972. Marvin Veal, who was in sole charge of hiring for that department, testified that no vacancy existed at that time and that Defendant was not seeking applicants for that department. Veal did not at any time change his testimony on this point and no testimony was given that conflicted with it.

■ The only evidence offered in response to Veal's testimony concerning the absence of vacancies and seeking ap-

plicants is the fact that other persons were hired and went to work in outside sales during August. As shown by Plaintiff's Exhibit 1, Melissa Sellmeyer went to work on August 14, 1972, and Kathy Guy Matthews on August 28, 1972. While this is true, it is, standing alone, misleading. As testified to by Veal and corroborated by Defendant's Exhibits 8 and 9, Melissa Sellmeyer applied for work and was hired on July 21, 1972, and Kathy Matthews applied and was hired on August 17, 1972. The simple fact that they did not actually begin work until later does not detract from the fact that they had filled any existing vacancies.

The evidence also shows that vacancies opened after August 28, 1972, and were filled. For example, Larry Fricke went to work on September 5, 1972. All this shows, however, is that someone was hired after August 28, and not that a vacancy existed at that time. In any event, as shown by Defendant's Exhibit 7, Fricke had filed an application with Defendant on August 8, 1972, well before Plaintiff made her inquiry. It is important to understand that Plaintiff did not pursue her inquiry and had no further contact with anyone in Defendant's employ until October, when she, by her own testimony, called Ruth Johnson. Plaintiff had no application on file and made no effort to pursue the matter. Even with jobs opening at frequent intervals, Marvin Veal was not required to or expected to keep Plaintiff's brief inquiry in mind or to seek her out at a later time. The evidence is devoid of any indication that Plaintiff expected this or sought such action.

Thus, Plaintiff has no evidence to show the existence of a vacancy on August 28, and no evidence showing that Defendant was seeking applicants. On the other hand, Marvin Veal's unimpeached and unquestioned testimony shows that he was not seeking applicants and did not have existing vacancies in the outside sales department.

The allegations of Plaintiff concerning a failure to transfer or promote her to outside sales are equally without merit. On October 10, 1972, Plaintiff contacted Ruth Johnson concerning a job in the telephone sales department. There is no evidence to show that she at that time voiced any desire for or interest in an outside sales job and certainly she made no application for one. Plaintiff went to work in Defendant's phone department on October 11, 1972, and remained there until her discharge on March 13, 1973. At no time during that period did she contact or attempt to contact Marvin Veal concerning employment in outside sales, even though, by her own testimony, Plaintiff knew that Veal was the only person involved in outside sales hiring. Plaintiff testified that she did comment to some of her phone room supervisors about employment in outside sales, but, even if this testimony is credited, no evidence exists to show that such comments were communicated to Veal. Quite clearly Plaintiff failed to show that she made any kind of application, whether formal or informal, which would support her claims of failure to transfer or promote. The law does not require that an employer be a mind reader. If Plaintiff expected a transfer or promotion to outside sales, it was for her to make that desire known to the proper party.

With regard to vacancies during Plaintiff's term of employment, the record shows only two persons hired into outside sales. One was Mary Kathleen McDonald, who was promoted from the phone room on February 5, 1973. The testimony of Marvin Veal, however, showed that McDonald was employed on a part time basis off and on for several years while completing college. He also testified that long before Plaintiff's telephone call on August 28, McDonald had been promised a job in outside sales, a fact of which Plaintiff herself testified she was aware. Thus, McDonald was transferred pursuant to a long standing agreement, and not to fill a sudden vacancy for which applicants were sought.

The other person hired during this period was Ricky L. White, who went to work on February 5, 1973. Admittedly, he filled an existing vacancy, but again, there is nothing to show that Plaintiff ever sought that vacancy. Also, there is no evidence as to the qualifications required for that job, a point to be discussed below.

Finally, it must be noted that Plaintiff's performance in the telephone sales room was not that of an employee deserving promotion. As Ruth Johnson testified, Plaintiff's performance was satisfactory during the first two months of her employment after October 11. After that, however, Plaintiff began a period of increasing tardiness and absence from work. Further, her attitude toward her supervisors became increasingly hostile and she became an increasingly disruptive factor in the telephone sales room. Thus, even had Plaintiff been qualified for outside sales and had she made her desires for such a job known, her own actions and attitudes rendered her undeserving even of consideration for a promotion.

In considering the issue of Plaintiff's qualifications for employment in outside sales, the key question is not whether Plaintiff felt she was qualified, but rather whether Plaintiff met the qualifications for the job she sought. Here, Plaintiff fails from the first, because she failed to produce any evidence which would show what the job qualifications for any job or jobs in outside sales were at any relevant time.

Even had Plaintiff established the job standards and qualifications for a job or jobs in outside sales, the evidence presented does not establish that Plaintiff's qualifications were those sought by Defendant at any time. Plaintff's sole experience in advertising sales, by her own testimony, consisted of employment in Defendant's telephone sales room plus a three or four month period with the *Southeast Journal,* a small weekly paper, and about four months with the Journal Newspapers in New York state, which published there, all advertising sheets and a small advertising newspaper, the gross circulation for all four being possibly 30,000. This hardly can be considered real experience when compared with a daily newspaper in a major metropolitan area and with nationwide circulation. The remainder of Plaintiff's dozen or so jobs prior to August 28, 1972, consisted of secretarial and clerical type work. This point of experience will be discussed below in relation to the college degree requirement.

The real question here is did Marvin Veal deny Plaintiff employment in outside sales despite her qualifications (assuming, of course, for argument that Plaintiff was qualified)? This is a vital point because only Veal had the authority to hire outside salespersons. The overwhelming and uncontradicted evidence shows that Veal would not have hired, transferred or promoted Plaintiff into outside sales even had a vacancy existed and even had Plaintiff continued to seek such employment. Veal testified that he never really considered Plaintiff suitable for employment in outside sales because he believed, based on his past knowledge of her during prior employment with Defendant, that Plaintiff lacked the maturity and experience necessary for such a job and that she did not have a good attitude, not being able to get along with her superiors. Veal's testimony in this regard is corroborated by Plaintiff's Exhibit 2, Veal's reference letter written on August 28, 1972, at Plaintiff's request. In that letter, he noted that Plaintiff had good potential, but that she required training and close, constant supervision. Further corroboration is seen in the fact that Veal, after the August 28 phone call, warned Ruth Johnson that Plaintiff was something of a troublemaker. This was testified to by both Johnson and Veal without dispute. Admittedly, Veal did make a comment to Plaintiff concerning the college degree requirement (discussed below) but this was only one thing in his mind on August 28 (and later)

which would have prevented Plaintiff from going into outside sales even had there been a vacancy.

From the foregoing, it can be seen that Plaintiff did not establish even a prima facie case. Also, Plaintiff failed to refute in any way the logical, justifiable reasons for Defendant's refusal to hire her into outside sales.

### B. *The College Degree Standard*

At trial and in her pleadings, Plaintiff contended that Defendant's college degree requirement for employment in outside sales was applied in a discriminatory manner, not only against Plaintiff but against females in general. Defendant submits that not only did Plaintiff fail to prove her allegations, but also that the evidence establishes that the requirement was not applied in any improper way.

There is agreement between the parties that there was a general requirement that applicants for outside sales jobs have a college degree. This requirement, by Marvin Veal's testimony, was instituted in an effort to upgrade the outside sales department. As Mr. Veal testified, Defendant felt that if an applicant lacked sufficient experience in this type of work, the college degree would be at least indicative of certain abilities in an applicant. He also testified that the requirement was never applied in a rigid manner and was waived if an applicant showed, by past experience or otherwise, that he or she possessed the qualities sought by Defendant for its outside sales personnel. This testimony was never questioned or refuted by Plaintiff.

The evidence demonstrates that the college degree requirement and the waiver policy were applied in a non-discriminatory manner. Plaintiff's Exhibit 1 shows that two persons, Larry W. Fricke and Karen T. Jones, were employed in the outside sales department, and that each was employed around the time that Plaintiff first contacted Veal on August 28. Defendant's Exhibits 6 and 7 and Marvin Veal's testimony also show that these individuals had more than enough experience and references to establish their abilities, and that because of that experience, the college degree requirement was waived.

Plaintiff's entire case on the college degree issue is based on a showing from Plaintiff's records that there were more men in outside sales without college degrees than women. There is nothing in the record, however, to show any breakdown of applicants by college degrees, by sex, by other qualifications such as experience, numbers hired or rejected, or similar data. The fact that Defendant may have hired more women with college degrees than men means nothing unless considered in the light of factors which it was Plaintiff's burden to produce. This Court is well aware that statistics can have significant probative value even in a non-class action under the equal employment opportunity provisions of the Civil Rights Act, but in this instance, the Court is convinced that the failure to hire, promote or transfer the Plaintiff was based on individual, not group, characteristics. *Peters v. Jefferson Chemical Co., supra* at 451–452.

Plaintiff's statistics do show one thing of some significance, and that is that Defendant employs both males and females in its outside sales department, and neither sex appears in only nominal numbers.

## II. ALLEGED RETALIATION

### A. *Facts*

The second basic claim asserted by Plaintiff is that Defendant engaged in a planned course of retaliation against her because she filed charges with the EEOC. Plaintiff contends that the so-called retaliation took the form of changing her job assignment, lunch hour and breaks, being singled out by her immediate supervisors for reprimands, discharge on March 13, 1973, and finally giving bad references to prospective employers. As shown below, Plaintiff's allegations are wholly without merit and have no credible support in the evidence.

■ When considering the evidence in this case, as presented below, two things should be kept in mind. First, Plaintiff bears the burden of showing that Defendant *intended* to retaliate against her when it took the actions against her complained of herein. See, e. g., *Gillin v. Federal Paper Bd. Co., Inc.*, 479 F.2d 97 (2d Cir. 1973); *Christian v. General Motors Corp.*, 341 F.Supp. 1207 (E.D.Mo.1972). Also, it should be remembered that there can be no intent unless there is knowledge that the Plaintiff filed charges. See, e. g., *Christian v. General Motors Corp.*, supra.

B. *Job Assignment and Lunch Hour Changes*

■ There is no dispute that Plaintiff's job assignment was changed or that her lunch hour and break times were changed. In support of her allegations of retaliation, however, Plaintiff produced only her testimony and the testimony of Brenda Harris, Sandra Porth and Rita Sturtevant as to the *timing* of the changes. Plaintiff's testimony as to the timing of the various changes is confused. First, she testified that her job assignment and desk were changed after filing charges, then she testified that her job assignment may have been changed shortly before she filed charges on February 27, 1973, and only her lunch hour and break times were changed after the filing. The testimony of the other three witnesses produced by Plaintiff is equally vague. Each of them, Porth, Sturtevant and Harris, did no more than testify that the lunch hour and break changes were instituted within a short time after the filing of charges, probably within a day or two. None of the three testified concerning the time of the job assignment change.

Defendant's evidence on the changes established conclusively that Plaintiff's job assignment was changed from automotive sales to employment sales as of January 22, 1973. Maurice Townsend, Plaintiff's immediate supervisor, testified that Plaintiff's job assignment and desk were changed effective January 22, 1973. Her testimony was corroborated by three daily work sheets prepared by Townsend on the relevant days. First, Defendant's Exhibit 13 showed that on Friday, January 19, 1973, Plaintiff was assigned to automobile advertising sales. Defendant's Exhibit 14, prepared by Townsend on January 22, 1973, reflects the reassignment of Plaintiff to employment advertising sales, effective on that date, and Defendant's Exhibit 15 shows Plaintiff's continuing work in her new job assignment on January 26, 1973. It is significant that Plaintiff did not question the accuracy or the validity of these records in any way. It should also be remembered that Maurice Townsend testified without question or contradiction that the January 22 job change was the only one made with regard to Plaintiff between October 11, 1972 and March 13, 1973.

When the various dates are considered, it is obvious that the job assignment had no connection with the filing of EEOC charges by Plaintiff. As shown by Plaintiff's Exhibit 4 and Defendant's Exhibit 11, the first charge of discrimination filed by Plaintiff was not filed until February 27, 1973, over one month *after* the change in Plaintiff's duties.

Also, Defendant's witnesses, Johnson and Townsend, testified that there was a need for someone in the employment division. The choice fell on Plaintiff because her supervisors believed she was dissatisfied where she was and might improve in attitude and performance with a new assignment.

The change in Plaintiff's lunch hour and break times also had nothing to do with the charge filed on February 27. Maurice Townsend testified that she changed Plaintiff's lunch hour and breaks within two weeks of the January 22 job reassignment, again, well before Plaintiff filed any charges.

The reasons for the change made in Plaintiff's lunch hour and breaks are also well established in the record. Maurice Townsend testified that the choice

of lunch hours and break times was made on a seniority basis within each division under her supervision. Thus, when Plaintiff's job assignment was changed, she became the most junior person in the employment sales division and had to take a less desirable lunch hour and break time since the more senior salespersons desired the other available times. Again, it should be noted that Plaintiff did not question this testimony or produce any evidence which would refute it. Indeed, one of Plaintiff's own witnesses, Brenda Harris, testified on cross-examination that all lunch hours and job assignments are geared to the particular job assignment.

The final point of evidence fatal to the Plaintiff's case is the fact that neither Ruth Johnson nor Maurice Townsend knew that Plaintiff had filed EEOC charges until after Plaintiff's discharge on March 13, 1973. Both Johnson and Townsend so testified, and Plaintiff neither questioned that testimony nor produced one item of evidence to the contrary. This lack of knowledge on behalf of Townsend and Johnson is substantiated by the testimony of Marvin Veal, who testified that he was informed of the EEOC charge on March 2, 1973, but, pursuant to instructions from his superiors, told no one about it.

## C. *Reprimands and Warnings*

 Plaintiff alleges that after she filed charges on February 27, 1973, she was retaliated against by being singled out for reprimands and warnings and was finally discharged. The record evidences that these actions were not motivated by the filing of the EEOC charges but were necessary disciplinary actions.

Neither Plaintiff nor any of the witnesses called in Plaintiff's behalf denied that Plaintiff was tardy in arriving to work in the mornings or in returning from breaks and lunch, and do not deny that such tardiness was common. Nor is there any dispute that Plaintiff was reprimanded on a number of occasions by Ruth Johnson and Maurice Townsend

for such tardiness. Plaintiff herself testified she was warned and reprimanded several times for being late to work and on several other occasions for being late coming in from lunch or breaks.

Plaintiff does take the position that she was singled out for reprimands and not allowed to explain after she filed charges. The only evidence of this is the testimony of Plaintiff herself and Rita Sturtevant and Brenda Harris. Defendant submits that when this testimony is considered in light of the other testimony of these same witnesses, it is obvious they must be discredited. The basis of the testimony given by these witnesses is that *they* went to lunch and breaks with Plaintiff and were not reprimanded when they returned late with her from the one o'clock lunch hour. How can this testimony be credited when these same witnesses testified that Plaintiff's lunch hour and break times were changed within a day or two after Plaintiff filed charges and they no longer went to lunch with Plaintiff? The testimony becomes even more suspect when it is remembered that Defendant did not receive notice of the charges filed by Plaintiff until March 1, 1973, and Marvin Veal testified that even he had no notice of the charges until March 2, 1973. It is simply inconceivable that those witnesses could have observed the establishment of some grand scheme by Defendant in the day or two these witnesses testified was available to them.

Further, the Plaintiff and her witnesses made it clear that Ruth Johnson and Maurice Townsend were the only supervisors engaged in the sudden rash of reprimands. Yet, as already mentioned, the undisputed evidence shows that neither Johnson nor Townsend knew Plaintiff had filed EEOC charges until after Plaintiff's discharge.

What is actually revealed by the credible evidence in this case is the fact that Plaintiff was consistently tardy and was warned numerous times. Plaintiff's failure to correct her ways forced her

supervisors to give harsher reprimands, and these had nothing to do with the filing of charges with the EEOC. Plaintiff was not "singled out" for any reason but the fact that her actions deserved such response.

### D. *Discharge*

■ The only evidence concerning the discharge produced by Plaintiff is that she was discharged and that the discharge was on March 13, 1973, after she filed charges on February 27, 1973. Plaintiff thus does nothing but ask the Court to infer from the timing alone that she was discharged in retaliation for filing charges.

The hard, credible evidence, however, shows that Plaintiff was discharged because of her excessive absences, continued tardiness, and generally poor attitude. The evidence shows that Plaintiff was employed between October 11, 1972 and March 13, 1973. During that five-month period, which consisted of one hundred fifty-three (153) days, about one hundred ten (110), of which were working days, Plaintiff was absent at least fifteen (15) times, well in excess of ten percent of her total work time. Plaintiff herself admitted that she was warned on a number of occasions concerning her absences and that finally sometime in January, 1973, she was warned by Ruth Johnson that she would be fired if she was absent again. As can be seen, this warning was given well before Plaintiff filed EEOC charges.

The "straw that broke the camel's back" came on March 12, 1973. Plaintiff's own testimony best reflects the events of that day. Plaintiff testified that she worked on the morning of March 12, 1973, and went to her apartment for lunch. Upon arriving home, she found her dishwasher had overflowed and called Ruth Johnson, the phone room supervisor, to say that the mess had to be cleaned up and that Plaintiff would not be in the rest of the day. Then Plaintiff testified that it took only about one-half hour to clean up, and

rather than return to work, Plaintiff took the rest of the day off and went to file additional charges with the EEOC. This, despite the fact that Plaintiff knew she faced discharge for any additional absence.

In the meantime, according to Ruth Johnson's testimony, Johnson decided that Plaintiff had pushed things far enough. Johnson decided to discharge Plaintiff and went to Marvin Veal for his approval. Veal left the final decision up to Johnson *but still did not inform her* that Plaintiff *previously had filed EEOC charges*. The next morning, Plaintiff reported to work late and was informed by Johnson of the discharge decision. Plaintiff created a disturbance in the phone room and had to be asked to leave quietly.

The evidence establishes nothing in Plaintiff's favor except that the discharge occurred after she filed charges. On the other hand, the evidence does establish, in Defendant's favor, that Plaintiff was absent over ten percent of the time she worked, was tardy constantly, and that the supervisors who made the decisions in question knew nothing of the filing of charges by the Plaintiff with the EEOC.

### E. *References to Employers*

■ Simply stated, there is absolutely no evidence in the record that would support Plaintiff's allegation that Defendant gave bad references to prospective employers. Indeed, there is no evidence to show that any reference of any kind was given to a prospective employer of Plaintiff after she filed charges on February 27, 1973, or that any employer even contacted Defendant for references. Plaintiff's attorney, on cross-examination of Ruth Johnson, did ask if she (Johnson) had been contacted by Lucas B & B, but Johnson testified that she recalled no such contact and if such contact had taken place, she would have referred the call to Defendant's personnel department.

The record at trial reveals the same facts as to references as those given by Plaintiff in her oral deposition. The allegations by Plaintiff as to bad references were based on nothing more than Plaintiff's surmise that since she was was not hired, Defendant must have given bad references. Certainly there is no evidence or even the hint of a fact which would support Plaintiff's claim.

Plaintiff's entire case concerning retaliation is a house of cards without real substance or foundation. Plaintiff herself testified on cross-examination that she believed she was retaliated against only because various actions occurred at certain times. Thus, without real evidence, she asks the Court to infer retaliatory intent from the occurrence of wholly unrelated events. But, as shown above, the Plaintiff's claims as to the timing and even occurrence of many of those events have been placed in serious doubt or refuted entirely. For example, the job assignment and lunch hour change, a key part of Plaintiff's claim, have been shown, conclusively, to have occurred before Plaintiff filed charges. The evidence of being singled out for reprimands for tardiness is negated by the fact that Plaintiff's own witnesses no longer went to lunch with her after the lunch hour change. Finally, the unimpeached and unrefuted evidence shows that the persons who allegedly retaliated against Plaintiff, Ruth Johnson and Maurice Townsend, never knew of the filing of EEOC charges until after Plaintiff's discharge. Thus, it can be seen that Plaintiff has failed completely to establish any case for retaliation.

Accordingly, I must conclude that Plaintiff was not denied employment in the Defendant's outside advertising sales department because of her sex, and that Defendant did not retaliate against her because she had filed a charge of discrimination against the Defendant with the EEOC.

Defendant's attorneys are requested to prepare and submit an appropriate order.