**Linda Sue HOLDER, Plaintiff-Appellant,**

v.

**OLD BEN COAL COMPANY,
Defendant-Appellee.**

**No. 79-1091.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1979.

Decided Feb. 4, 1980.

As Modified on Denial of Rehearing and
Rehearing In Banc April 17, 1980.

Virginia M. O'Leary, Oakland City, Ind.,
for plaintiff-appellant.

Fred S. White, Evansville, Ind., for defendant-appellee.

Before SWYGERT and WOOD, Circuit
Judges, and CAMPBELL, Senior District
Judge.*

HARLINGTON WOOD, Jr., Circuit
Judge.

Plaintiff brought this suit under the sex
discrimination provisions of Title VII of the
Civil Rights Act of 1964, as amended, 42
U.S.C. §§ 2000e, *et seq.*, contending that
defendant Old Ben Coal Co. discriminated
against her on the basis of sex in its hiring
practices.[1] Plaintiff seeks back pay, seniority, pension credits, and her costs and attorney fees. The district court, after a short
one day bench trial, concluded that plaintiff
had not proven a prima facie case of sex
discrimination in that she failed to prove
that she was qualified for any employment
position at the time she was rejected for
employment. Plaintiff appeals the court's
judgment. We affirm.

---

* Senior District Judge William J. Campbell of
the Northern District of Illinois is sitting by
designation.

1. 42 U.S.C. § 2000e-2 provides in pertinent
part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge
any individual, or otherwise to discriminate
against any individual with respect to his
compensation, terms, conditions, or privileg-

es of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any
way which would deprive or tend to deprive
any individual of employment opportunities
or otherwise adversely affect his status as an
employee, because of such individual's race,
color, religion, sex, or national origin.

Defendant owned and operated two strip mines in Indiana. In December 1974 plaintiff filed the first of her three applications with defendant for an unskilled position.[2] During two years of the period in question in which she sought employment at the mine, employment applications for unskilled positions exceeded 1000 per year. Although not all applicants were granted an interview, plaintiff was interviewed by the personnel administrator. At the interview the personnel administrator explained to plaintiff that due to the closing of one of the defendant's mines any available positions would, in accordance with the union contract, first be offered to a panel of former employees who had been laid off at the closed mine. In keeping with company policy the plaintiff's first application, which was the basis for that initial interview, was considered obsolete after one year and discarded, and therefore was not in evidence. There results a dispute as to whether or not that first application made mention of experience plaintiff claims to have had driving a truck of some kind for four months for her husband while he operated his own business. The mine personnel administrator who interviewed plaintiff denies that any mention was made by plaintiff of any truck driving experience. We note, also, that no mention of any prior truck driving experience was made on plaintiff's second or third application.

It is clear from her other applications that plaintiff attended high school and after that a beauty college from which she graduated with a degree. One winter plaintiff also did light work in a small factory. An examination of plaintiff's second application submitted about a year later, which we assume was at least somewhat similar to her first, reveals that plaintiff's education and experience were primarily as a beautician for eleven years. There is not the slightest hint in the application of any education, experience or talent in any way useful in a coal mine.

Plaintiff also charges that the disposal of her year old obsolete application was in itself discriminatory as the applications of several men were retained. Those retention exceptions were satisfactorily explained for nondiscriminatory reasons.

From time to time during the period that plaintiff was seeking employment she would inquire by phone about job possibilities. On one occasion instead of calling the personnel office, she called the mine superintendent and expressed to him her interest in a position. The superintendent explained to her that job applications had to be made not to him but to the regional personnel office located elsewhere. The plaintiff's testimony relates that conversation in this way:

"Well, I told him that I was wanting a job at the mine, and I asked him if there was any way that he could help me, and he told me no, that there wasn't, and that they didn't have the shower facilities for the women yet."

Plaintiff argues here based only on that testimony that she was told by the defendant that she could not be employed because shower facilities for women had not yet been provided. That does not appear to be a fair interpretation of her own testimony. After plaintiff was told she was applying at the wrong place the lack of shower facilities was mentioned, but not necessarily as a reason for not hiring her. It could as well have been considered only a comment about a situation that might ordinarily be expected to be of some practical interest to plaintiff. When the superintendent was later called as a witness, plaintiff failed to examine the superintendent about any alleged comment of his regarding showers. In any event the superintendent was not in charge of hiring the defendant. In 1976 rehiring from the panel was complete and very shortly thereafter in the same year, showers or no showers, defendant began hiring females in union positions. Three women were initially hired.

---

**2.** Judge Noland took note in his Memorandum of Decision of plaintiff's physical size to which plaintiff objects on the basis that there was no support in the record for the finding. Plain-tiff's third application, however, reveals that she was a little under 5′ tall and weighed a little over 100 lbs. It is irrelevant as plaintiff's size was not an issue.

Plaintiff's third application later filed in 1978 is different. By that time she had been hired by another coal mine and had accumulated sixteen months mining experience. She was hired by defendant on the basis of that application in 1978 and remains defendant's employee.

At the trial Judge Noland applied the test of a prima facie case for a Title VII plaintiff set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and found that plaintiff had failed to prove that she was qualified for a position at defendant's mine.[3] Plaintiff first contends that she established her prima facie case by showing the category for which she applied was labeled "unskilled." Plaintiff then claims that since an unskilled job, in her view, requires no qualifications, she was capable of doing any unskilled job and was thus necessarily qualified within the meaning of *McDonnell Douglas.* Therefore, she says the district court erred in finding that she had not established this element of her prima facie case. A job categorized as unskilled, however, does not necessarily mean that certain qualifications or experience are not required or preferred for the job. Unskilled does not mean unqualified. "Unskilled" commonly means not skilled in some handicraft, or devoid of any technical training. *Oxford English Dictionary* (Compact ed. 1971). It need not mean lacking any useful experience qualification.

No evidence was introduced to show that defendant applied the term "unskilled" to mean a total lack of qualifications or experience. The record shows to the contrary that defendant did look for certain qualifications in reviewing applicants for unskilled positions. Defendant's personnel administrator testified that when defendant sought applicants for unskilled positions, it primarily sought persons who had operated mobile equipment or had worked with heavy equipment. The applications of several persons hired demonstrate that defendant also sought applicants who had welding or extensive truck driving or maintenance experience. The mine also sought employees in the unskilled category who appeared to be capable not only of menial tasks but also of filling in and assisting with other jobs as might be helpful when needed due to vacations, sickness or otherwise.

Defendant classified all applicants for union positions as skilled or unskilled. A skilled applicant needed to have a minimum of six months experience as a dragline operator, shovel operator, machinist, electrician, welder, mechanic, bulldozer operator, overburden driller, or overburden shooter. Unskilled positions were neither advertised by defendants nor described by the collective bargaining agreement as requiring any particular qualifications. Plaintiff reads *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1283 (7th Cir. 1977), to say that plaintiff need not show qualifications for an unskilled job where the employer has not apprised applicants of any preferred qualifications or experience. We do not read *Flowers* so broadly. In *Flowers* this court stated that a plaintiff need not disprove as a cause of *his discharge* a source of dissatisfaction of which he is unaware. Here, defendant held out employment opportunities for unskilled jobs. There is no indication that defendant did not consistently seek the most qualified and experienced workers to fill those unskilled positions. It does not follow, as plaintiff asserts, that all applicants without six months experience for a skilled position, a company standard, must necessarily be considered qualified for unskilled positions. Instead, that suggests

---

**3.** In *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824, the Supreme Court described the initial burden of proof which a plaintiff must meet in an employment discrimination case:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

that the skilled/unskilled dichotomy only concerned applicants' technical ability. The "unskilled" category merely indicated that defendant did not require any technical skills for those positions. The six-month experience requirement only established that an applicant with that much experience could be considered to have the requisite expertise in one of the listed skill areas. It not only appears in the evidence, but it is not an unrealistic or impractical assumption, that the employer did not and would not necessarily consider all applicants for unskilled positions to be equally qualified. It simply does not amount to sex discrimination for a coal mine to fill an unskilled position with a person, male or female, who had had some experience with welding, electricity, heavy equipment, etc., instead of with a beautician.[4] That some other mine had seen fit to hire plaintiff which permitted her to gain some mining experience so as later to be acceptable to defendant, does not reflect adversely upon defendant's initial exercise of its own business judgment not to hire her.

The plaintiff brands the skilled/unskilled work classifications in use by defendant as a semantic shell game. The defendant's game, she argues, consisted of mine officials classifying a job "as skilled whenever women or other undesirables applied and unskilled whenever men or favored men applied." That argument may be fostered by commendable zeal to eliminate sex discrimination whenever suspicion arises, but in this case it totally lacks support in the evidence.

Petitioner also complains that some outside men were hired before the union panel was exhausted. The defendant went outside the panel of laid off miners a few times but only when the panel could not supply the need. The evidence showed, for example, that one man hired outside the panel was both a welder and mechanic, and another had twelve years experience as a sheet metal worker and had had training as a welder. There was nothing which required defendant to ignore the better qualifications of others simply because plaintiff was a woman.

■ Plaintiff also contends that the district court confused the burden of proof in Title VII claims by considering experience and comparable qualifications as a requirement of a plaintiff's prima facie showing. Plaintiff claims that since hiring an experienced applicant was merely a preference by defendant, not a necessity, that her lack of experience could not be used to establish that plaintiff was not qualified within the meaning of *McDonnell Douglas*. Instead, she argues, defendant should have been required to establish in its rebuttal of plaintiff's prima facie case that those hired were more experienced. In *McDonnell Douglas* the Supreme Court stated that a Title VII plaintiff carries the initial burden to establish that, *inter alia*, she is qualified for a job for which the employer was seeking applicants and that after her rejection the employer continued to seek applicants from persons of qualifications comparable to plaintiff's. The court also stated that the *McDonnell Douglas* formula of a prima facie case is to be flexibly, not rigidly, applied. *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824, *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396, (1977). The plaintiff "carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting *International Brotherhood of Teamsters*, 431 U.S. at 358, 97 S.Ct. at 1866). In applying this language the Supreme Court has said that a Title VII plaintiff must show that rejection for a job did not result from "the two most common legitimate reasons

---

4. Approving that selection in the case of this coal mine is in no way intended to disparage the position of beauticians in our society.

on which an employer might rely to reject a job applicant: an *absolute or relative lack of qualifications* or the absence of a vacancy in the job sought." *International Brotherhood of Teamsters*, 431 U.S. at 358 n. 44, 97 S.Ct. at 1866, 52 L.Ed.2d 429 (emphasis added). A desire to hire the more experienced or better qualified applicant is a nondiscriminatory, legitimate, and common reason on which to base a hiring decision. *Pond v. Braniff Airways, Inc.*, 500 F.2d 161, 165 (5th Cir. 1974). A Title VII plaintiff must show that the employer was seeking applicants of qualifications comparable to plaintiff's. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The employer here consistently sought applicants for unskilled positions with mining related experience. The mere labeling of the job as unskilled does not make all applicants qualified within the meaning of *McDonnell Douglas.* The evidence fails to show that defendant ever sought or hired anyone with experience comparable to plaintiff's. Plaintiff has shown nothing more than she applied for a job labelled unskilled and she was rejected. This does not constitute a prima facie showing.[5] Title VII does not require that a less qualified female be preferred over a better qualified male. *Griggs v. Duke Power Co.*, 401 U.S. 424, 436, 91 S.Ct. 849, 856, 28 L.Ed.2d 158, 167 (1971); *Olson v. Philco-Ford*, 531 F.2d 474, 478 (10th Cir. 1976); *Peters v. Jefferson Chemical Co.*, 516 F.2d 447, 451–52 (5th Cir. 1975). Regardless of where the technical burden rested, evidence in full support of the trial judge's determination is in the record.[6]

Plaintiff's proof established that she belonged to a minority, that she applied for a job, and that women had not been previously hired in the mine. She failed to prove that she was qualified for a job for which she was not hired despite her qualifications. In fact, some of plaintiff's exhibits helped establish the defendant's case. Even the women hired by the defendant shortly after the panel was exhausted and before plaintiff was hired had qualifications as seen in their applications unmatched by plaintiff's. For instance, one woman, a college graduate had had over four years experience in a sheet metal machine shop and had completed a Chrysler Corp. course entitled "Women on Wheels." Another had had ten years experience as a fork truck driver and material handler. It is obvious why a mine

---

5. The dissent directs us to our recent decision in *Davis v. Weidner*, 596 F.2d 726 (7th Cir. 1979), which it claims controls this case.

In *Davis* the female plaintiff was not retained as a member of the nontenured faculty at a university. The university had decided to retain only three of five nontenured faculty members and a university committee ranked plaintiff as the fourth best professor of the five. A male was later hired to fill plaintiff's position. The plaintiff brought a Title VII action. This court, distinguishing *International Brotherhood of Teamsters*, said that on those facts the plaintiff did not need to show as a part of her prima facie case that she was as qualified as those retained. *Id.* at 730. The court went on to add if a " 'relatively less qualified' applicant for a job possessed qualifications significantly and obviously inferior to the person actually given the job," this requirement would be less persuasive. *Id.* at 730 n. 2.

Since, as we said in *Davis*, the specification of prima facie proof necessarily varies with respect to differing factual situations, (*id.* at 729 (quoting *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1824, 36 L.Ed.2d 677)), we find *Davis* distinguishable. The judgment not to retain the plaintiff in *Davis* was a very subjective one based on information not visible to the plaintiff and in the possession of defendant, so it made sense to require that defendant prove plaintiff was less qualified. Here the greater mining related experience of those hired was obvious from the applications which were available to plaintiff. There is no reason to relieve plaintiff of the burden of showing she was relatively as qualified as those hired.

Nor do we find that the D.C. Circuit decision, *Davis v. Califano*, 198 U.S.App.D.C. 224, 613 F.2d 957 (D.C.Cir.1979), is contrary to our holding. In *Davis v. Califano* the court held that when a plaintiff has convincing statistical proof that males were favored *and* she shows that she was qualified in an absolute sense, then she has established a prima facie case. Here the plaintiff did not make a statistical showing and our examination of the record indicates that she could not have made such a showing.

6. Even if we were to hold that plaintiff had established a prima facie case, little would be served by a remand because the record convincingly reveals that defendant hired applicants who were more qualified than plaintiff. Any error in classifying her proof as less than sufficient to establish her prima facie case was harmless. *Peters*, 516 F.2d at 450.

operator would prefer those women over a beautician even for unskilled jobs.

During many past years it was considered to be an era of enlightenment and economic and social progress when women and children were kept out of the mines. The defendant in this case, however, instead of fostering a policy of sex discrimination in keeping with that dated view, appears to have become a leader in the return of women to the mines. To hold the defendant liable in this particular case would not only do a disservice to the defendant but also to the worthy policy prohibiting employment practices which unlawfully discriminate on the basis of sex by permitting that policy to be misused.

As the plaintiff failed to demonstrate that the findings of the trial court were clearly erroneous or that the law was misapplied the judgment is

Affirmed.

SWYGERT, Circuit Judge, dissenting. I respectfully dissent.

The trial judge held, and the majority agrees, that the plaintiff failed to establish a *prima facie* case of sex discrimination in that she failed to prove that she was qualified for any employment position for which she applied. Because I am of the opinion that the plaintiff has shown that she possessed the qualifications required by the employer, I would hold that the plaintiff has made a *prima facie* showing of employment discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The district court did not consider whether the defendant met its burden of rebutting plaintiff's showing by proving a legitimate business reason for preferring to hire the male applicants instead of plaintiff. Therefore, I would remand the case so that this determination could be made.

The distinction between job qualifications and legitimate employer preferences is crucial under Title VII and bears clarification in the light of the majority decision today. Qualifications must be distinguished from legitimate preferences because unless a Ti-

tle VII plaintiff can prove initially that he is qualified for the position sought, the burden does not shift to the employer to explain why that applicant was not hired. *McDonnell Douglas Corp. v. Green, supra.* It is settled that asserted qualifications must be scrutinized for job-relatedness, for, otherwise, "qualifications" can be devised which screen out applicants solely on the basis of sex or race. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

Similarly, qualifications, however job-related, must be uniform for all applicants in any particular job category, or else so-called qualifications can be required or not depending on illegitimate criteria such as the sex or race of the applicant. If the courts permit a job applicant to be called "unqualified" for not possessing a quality that is not required of all applicants, no *prima facie* case can be made and the burden will not shift to the employer to explain what may be a discriminatory application of even a job-related criterion. Therefore, employment criteria which are shown to be preferred rather than required must not be termed qualifications for purposes of a plaintiff's *prima facie* case.

In *Davis v. Weidner*, 596 F.2d 726 (7th Cir. 1979), an employer argued that the plaintiff there was not as qualified as other applicants for the position. It was contended that an additional element for establishing a *prima facie* case of employment discrimination be that the plaintiff's rejection did not result from a "*relative* lack of qualifications." 596 F.2d at 730 (emphasis in original). In holding that the plaintiff had made a *prima facie* showing of discrimination, we stated that the showing of a relative lack of qualifications was not properly a prerequisite of a *prima facie* case but was instead part of the employer's response. In *Davis v. Califano*, 198 U.S.App.D.C. 224, 613 F.2d 957 (D.C.Cir.1979), the court held that a showing of "the minimum objective qualifications" for a job is all that is necessary in order to make out a *prima facie* case. The court stated that other qualifications such as experience, unless a minimum

job criterion, did not have to be asserted by a plaintiff to make a *prima facie* case.

In the case at bar, plaintiff met the minimum qualifications for the job. The two jobs, general laborer and truck driver, for which plaintiff applied were labeled "unskilled." The Company announced no requirements or qualifications for the job. The Company's contract with the union stated no qualifications for unskilled jobs although explicitly listing qualifications for skilled jobs. Further, in the personal interview and many telephone conversations plaintiff had over a period of years concerning her desire for employment, she was never told that she was not qualified for the work for which she applied.

The trial judge erroneously relied on plaintiff's physical size and her lack of mining experience to prove her lack of qualification for an unskilled job. The Company's Personnel Administrator testified that the plaintiff's physical size was of no consequence in its decision and that the requirement of mining experience applied to skilled, not unskilled, jobs. Experience with heavy machinery, apparently found by the majority of this court to be the "qualification" for an unskilled position which plaintiff lacked, was conceded by the Personnel Administrator to be a basis for selection only "if it was available" when a vacancy occurred. If no applicant with experience in heavy machinery was available, an applicant without such experience was hired. Therefore, experience with heavy machinery was not a minimum requirement for the job. Plaintiff should not have been required to prove she had that experience in order to show that she was qualified.

The plaintiff is a woman who applied for a job for which she was qualified and for which the employer was seeking applicants. Despite her qualifications she was rejected, although subsequent to her application male applicants were hired in the job category for which she applied. It is stipulated that defendant employed no female applicants in union positions in its Indiana mines until July 1976. I would therefore hold that the plaintiff met her burden of proving a *prima facie* case under *McDonnell Douglas*.

The burden then shifted to the defendant to show a legitimate business reason for hiring those male applicants instead of the plaintiff. The crucial issue that emerged was whether the Company met that burden. That issue was never addressed by the trial judge because he erroneously found that the plaintiff had not made a *prima facie* case. Thus, an essential finding is absent, namely, whether the Company proved that in each instance it had a legitimate business reason for hiring a male applicant over the plaintiff, a woman. Because the trial judge misconceived the respective burdens, I think, in the interest of fairness to both parties, the judgment should be vacated and the case remanded for further proceedings. The district judge should make the essential finding on this issue, either on the present record or an extended record if additional evidence seems justified.