**Frank HERMAN and Frank Mullaney, Plaintiffs-Appellants,**

**v.**

**NATIONAL BROADCASTING COMPANY, INC., Defendant-Appellee.**

No. 83–2834.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1984.

Decided Sept. 26, 1984.

Rehearing and Rehearing En Banc Denied Oct. 29, 1984.

Bernard M. Mamet, Ltd., Chicago, Ill., for plaintiffs-appellants.

Philip C. Stahl, Reuben & Proctor, Chicago, Ill., for defendant-appellant.

Before PELL and ESCHBACH, Circuit Judges, and WYATT, Senior District Judge.*

* The Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, sitting by designation.

ESCHBACH, Circuit Judge.

The issue presented is whether the district court properly granted summary judgment in favor of the National Broadcasting Company ("NBC") and against the plaintiffs alleging nonwillful and willful violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. We agree with the district court that the nonwillful claims are barred by the statute of limitations, but we reverse the award of summary judgment and we remand the case for further proceedings on the willful claims.

### I.

The plaintiffs, Frank Herman and Frank Mullaney, were employed as film editors in the news department of NBC's Chicago station, WMAQ–TV. In the mid 1970's videotape replaced film as the means of capturing images. Accordingly, the film department was gradually eliminated as new electronic journalism ("E/J") positions were created. Employees who worked with film were not automatically transferred into E/J positions but, rather, had to apply for the jobs as they were created. The plaintiffs did apply for openings posted by NBC in 1976, 1977, and 1978. Herman and Mullaney, however, were not selected for those positions and, as the film operations were drawing to a close, were dismissed from their employment. Mullaney was 53 years old when he received notice of his termination on March 24, 1978; Herman was 58 when his termination notice arrived on April 28, 1978.

Believing that age played a role in NBC's decisions, the plaintiffs filed age-discrimination charges with the Department of Labor in May of 1978. Pursuant to a transfer of authority, see Reorganization Plan No. 1 of 1978, 92 Stat. 3781, the Equal Employment Opportunity Commission investigated the matter and as of September 21, 1979, believed the charges to have merit. A civil action was never brought by the Commission, however, and on May 2, 1980, the plaintiffs filed the complaint in this case.

### II.

A suit alleging a nonwillful violation of the ADEA must be brought "within two years after the cause of action has accrued." 29 U.S.C. § 255(a) (incorporated by 29 U.S.C. § 626(e)(1)). Because both plaintiffs received termination notices by April 1978, see Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980), but did not bring suit until May 1980, NBC moved for summary judgment on the plaintiffs' nonwillful claims (Count I). Responding to the motion, the plaintiffs asserted that NBC's actions constitute a "continuing violation"— i.e., illegal discrimination occurs each time NBC hires a person other than the plaintiffs in an E/J position. The district court, holding that the "continuing violation doctrine is meaningless under the facts of this case," 569 F.Supp. 282, 286, granted NBC's motion.

We fully agree with the district court's observation that the plaintiffs' reaction to the motion for partial summary judgment was, in fact, unresponsive. A predicate for a civil suit under the ADEA is a charge (previously an intent-to-sue notice) filed with the appropriate administrative agency. 29 U.S.C. § 626(d). Liberally construing the plaintiffs' charges in this case, see Dickerson v. DeLuxe Check Printers, Inc., 703 F.2d 276, 283 (8th Cir.1983), we find allegations regarding the terminations and events prior to the dismissals, but no mention is made of subsequent acts by NBC. In short, no post-termination decision or act of NBC was made the basis of an administrative charge. The most recent decision properly before the court, therefore, is NBC's decision to terminate Herman, which was made known to him in April of 1978. See Lawson v. Burlington Industries, Inc., 683 F.2d 862, 864 (4th Cir.), cert. denied, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982) ("Each alleged discriminatory recall constitutes a separate and complete act by the defendant, which triggers a new 180 day period" for filing an administrative charge.); Scaramuzzo v. Glenmore Distilleries, 501 F.Supp. 727,

729 (N.D.Ill.1980). This case was commenced more than two years after Herman and Mullaney received their dismissal notices and, absent any suggestion that the limitations period should be equitably modified, the district court correctly granted summary judgment in favor of NBC on the plaintiffs' nonwillful claims.

### III.

■ Having eliminated nonwillful allegations from the case, NBC made a motion for summary judgment on the remaining claims of willful discrimination.[1] To prove willfulness, a "plaintiff must show that the defendant's actions were knowing and voluntary and that he knew or reasonably should have known that those actions violated the ADEA." *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149, 156 (7th Cir.1981). NBC, which posted ADEA notices and employed an ADEA compliance officer, was in no position to plead ignorance of the law. *See also id.* at 156 n. 10. Accordingly, NBC attacked the plaintiffs' central allegation—that age played a role in the plaintiffs' separation from NBC.[2] To this end, NBC obtained from Willis Marshall, Director of Technical Operations and Engineering for WMAQ–TV, an affidavit stating that when he selected three E/J editors pursuant to a job posting in March 1978, he chose "the three best applicants" and "did not consider the ages of any of the applicants."

We believe that NBC's showing was insufficient to warrant summary judgment. It is the movant's burden to establish the absence of a genuine issue of material fact; if this burden is not met, the opposing party need not respond with evidentiary material. *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, — U.S. —, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). NBC only submitted evidence indicating that age played

no role in the selection of E/J editors in March 1978. However, the complaint, as amplified by answers to interrogatories, encompassed more than the 1978 selections. The plaintiffs were passed over when E/J positions were filled in 1976 and 1977, but NBC submitted no evidence to refute the allegation that age played a role in these hiring decisions.

■ Instead of attacking all of the plaintiffs' allegations on the merits, NBC mischaracterized the district court's order granting the initial motion for partial summary judgment, *see supra* at 3. The district court in that order removed the plaintiffs' nonwillful claims from the case; the court did not, contrary to NBC's assertion, limit the plaintiffs' allegations of willful violations to the employment choices made in March 1978. 569 F.Supp. at 288. NBC may believe that the March 1978 decisions are the only ones before the court because administrative charges were not filed within 180 days of the prior decisions, *see* 29 U.S.C. § 626(d)(1). But this unilateral understanding of the law as it applies to this case is not the only or inevitable view. The continuing violation doctrine, which has no place with respect to acts never made the basis of a charge, *see supra* at 3, does work "to toll the 180 day period for *filing with the EEOC.*" *Herman v. National Broadcasting Company*, 569 F.Supp. at 286 (emphasis in original); *see also Roberts v. North American Rockwell Corp.*, 650 F.2d 823, 826 (6th Cir.1981); *Milton v. Weinberger*, 645 F.2d 1070, 1075 (D.C.Cir.1981). Similarly, the 180-day period is subject to equitable modifications, *see Posey v. Skyline Corp.*, 702 F.2d 102, 104 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), and may not even commence running until "the employee knows or should know that an unlawful practice has been committed." *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 593 (9th Cir.1981), *cert. denied*, 459 U.S.

---

1. The statute of limitations for willful claims is three years. 29 U.S.C. § 255(a) (incorporated by 29 U.S.C. § 626(e)(1)).

2. In essence, therefore, NBC's position was that the plaintiffs could not prove a nonwillful violation.

1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). We raise these points of law, not to discuss their viability or application to the facts of this case, but to demonstrate that NBC's hiring decisions before March 1978 have not been eliminated from the case.

Although the award of summary judgment cannot be affirmed, it could still be the case that the March 1978 decisions should be removed from the list of possible ADEA violations. *See generally* Fed.R. Civ.P. 56(d) (case not fully adjudicated on summary judgment motion). Addressing this point in its brief to this court (as well as in its memorandum to the district court), NBC includes the following "quote" purportedly from *Holder v. Old Ben Coal Company,* 618 F.2d 1198, 1202 (7th Cir. 1980):

> A desire to hire the more experienced or better qualified applicant is a non-discriminatory, legitimate and common reason on which to base a hiring decision. Thus ... plaintiff must foreclose this possible explanation for a hiring decision before [a] prima facie case is established.

Appellee Brief at 15. Relying on this language, particularly the latter sentence, NBC asserts that "plaintiffs cannot meet the threshold requirements of a prima facie case of age discrimination." *Id.* at 17. NBC has, however, misquoted *Holder.* The sentence "Thus ... plaintiff must foreclose this possible explanation for a hiring decision before a prima facie case is established" was deleted from the *Holder* opinion on April 17, 1980, when the petition for rehearing was denied. Thus four years after the opinion was modified and correctly published in the *Federal Reporter,* NBC continues to cite and rely on a deleted sentence. We, of course, do not suggest that NBC's attorneys have intentionally misrepresented *Holder,* but lawyerlike steps to ensure accuracy plainly were not taken.

A review of the submitted evidentiary materials reveals, in fact, that the plaintiffs can establish a prima facie case at trial. The plaintiffs were within the protected age group (Herman was 58 and Mullaney was 53) when their applications for E/J positions were rejected in March 1978. *See Monroe v. Equal Employment Opportunity Commission,* 736 F.2d 394 at 403 (7th Cir.1984); *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1180 (6th Cir.1983). NBC, moreover, concedes that the plaintiffs "had minimal qualifications for the E/J editing positions"; and William Carter, NBC's supervisor of film department employees, testified in his deposition that he hoped to find E/J positions for "as many [film] people as possible." In short, Herman and Mullaney were the type of applicants that NBC sought, and they possessed "qualifications similar" to those actually selected. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013 (1st Cir.1979); *Holder v. Old Ben Coal Company,* 618 F.2d 1198, 1202 (7th Cir.1980) ("plaintiff must show that the employer was seeking applicants of qualifications comparable to plaintiff's").

■ The concept of a prima facie case, however, should not distract us from the real issue—whether age was a determining factor in NBC's March 1978 decisions. *See Monroe v. Equal Employment Opportunity Commission, supra,* at 402; *see also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 503, 67 L.Ed.2d 207 (1981) (plaintiff, at all times, retains the burden of persuasion). A prima facie case is not a complete shield against summary judgment. *See Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983). NBC produced a legitimate, nondiscriminatory reason for the rejections by submitting affidavits stating that qualifications, not age, determined the 1978 selections. *See Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 502. Consequently, the issue became (and still is) whether the evidence before the district court could support a jury verdict finding age discrimination. *See Mason v. Continental Illinois National Bank,* 704 F.2d 361, 366 (7th Cir.1983); *accord Douglas v. Anderson,* 656 F.2d 528, 535 n. 7 (9th Cir.1981). We now turn to that evidence.

■ Willis Marshall, the NBC executive who made the hiring decision, stated in his

affidavit that he selected the "three best applicants for the three E/J editing positions." Similarly, William Carter, the supervisor who advised Marshall on the matter, stated that he believed those chosen "were the three best applicants." Yet in his deposition, Marshall acknowledged that this type of hiring decision involves "subjective evaluation[s]." We understand this phrase to mean that reasonable employers could disagree about who were the best applicants; and, in any event, matters of preference that are not quantifiable were involved in the selection process. It is not wrong, and certainly not per se illegal, for an employer to exercise his business judgment as he sees fit. Yet a description such as "best" is not compelling evidence that the applicants' relative qualifications were such that no employer would have considered age. *See generally Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013 n. 9 (1st Cir.1979).

NBC's defense is not particularly strengthened by examining the describable and objective qualifications of the plaintiffs and those hired—Messrs. Stecker, Martin, and Samuelson. The evidence indicates that Herman and Mullaney were the more experienced film editors (19 years and 15 years, respectively).[3] Herman also had videotape experience, something that none of those hired claimed on their applications. Marshall stated in his affidavit that he valued Stecker's experience as a cameraman, but Herman also had such a background. Marshall further declared that Samuelson "was the fastest editor at WMAQ–TV," but speed does not necessarily translate into quality, and there was no showing that a fast film editor can become a fast videotape editor. Finally, NBC submitted no evidence to denigrate the plaintiffs' talents.

We do not suggest that Herman and Mullaney were the most qualified applicants. We describe the showings on this question only to point out that NBC's position was not overwhelming. Nevertheless, if the plaintiffs had no proof beyond a bare-bones prima facie case, we might hold that the March 1978 allegations should be removed from the case. But the plaintiffs' evidence did not stop at the prima facie line.

In 1976, as the change from film to videotape was in its early stages, William Carter met with Frank Jordan, described by Carter as the person "responsible for personnel during the changeover." Jordan, who was based in Washington, D.C., met with Carter in Chicago, where the two discussed moving people into E/J positions. Jordan asked Carter to prepare a memorandum listing the names of people in film positions, their company seniority, their proposed utilization, and *their dates of birth.* Carter collected the information, prepared the memorandum for Jordan, and gave a copy to Willis Marshall. Carter later added his personal rankings to the memorandum, which was then used by Marshall in making his March 1978 decisions. If age was not a factor in the hiring decisions, why did the memorandum requested by a top NBC executive, and used by those immediately responsible for hiring, contain such information? There may, of course, be a nondiscriminatory explanation, but that possibility does not detract from the evidentiary value of the document.

Moreover, the plaintiffs submitted an affidavit of Richard Ortner, which states that in a job interview with WMAQ–TV's General Manager in 1974, he was told, "Being 50 years old is an absolute no, no for being hired on staff." The General Manager, to be sure, left the Chicago station in 1976, but the transfer to videotape was already in progress. And, although NBC discounts the Ortner affidavit, past discriminatory acts of an employer are evidence of a "cus-

---

**3.** In its memorandum below, NBC stated that Martin "had 16 years of editing experience with WMAQ–TV." But the documents produced by NBC indicate that, although Martin had been with NBC for 16 years, he had 12 years of editing experience. This inconsistency is not significant, however, because one of those hired, Stecker, had only 7 years of editing experience.

tom" or "policy" of discrimination. *See Morris v. Washington Metropolitan Area Transit Authority,* 702 F.2d 1037, 1045 (D.C.Cir.1983).

Finally, the plaintiffs have statistical support for their case. The usefulness of statistical evidence depends on the circumstances of the case, *compare Reeves v. General Foods Corp.,* 682 F.2d 515, 525 (5th Cir.1982), *with Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1224 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981), and we will not assess the force of the instant data.[4] We will note that the 20 persons hired pursuant to the 1976, 1977, and 1978 job postings were all under 50 years old. To rebut the plaintiffs' view of the statistics, at oral argument NBC directed our attention to a document indicating that 16 film employees under 50 years old were not retained in the transition. That same document, however, shows that 33 persons *under* 50 were hired in new jobs, whereas all 11 employees *over* 50 were dismissed.

In conclusion, we disagree with the district court's statement that "plaintiffs ... have offered no proof which casts doubt on the veracity of NBC's [proffered] reasons for making its hiring decisions." The district court may have believed that the plaintiffs needed direct evidence of discriminatory intent (such as an admission), but that plainly is not the law, *see United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983). As the Supreme Court declared in *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 472, 82 S.Ct. 486, 490, 7 L.Ed.2d 458 (1962), "we cannot say on this record that 'it is quite clear what the truth is.'" Accordingly, we hold that the March 1978 allegations should not be removed from the case.

## IV.

For the reasons expressed in this opinion, the district court's order removing the alle-

gations of nonwillful violations of the ADEA, contained in Count I, is affirmed. We reverse, however, the award of summary judgment and the case is remanded for proceedings consistent with this opinion. Circuit Rule 18 shall not apply and costs on appeal are awarded to the plaintiffs.

---

4. The plaintiffs assert that an expert will testify that the statistics establish that age did play a role in NBC's hiring decisions. However, no affidavit to that effect was filed, *see* Fed.R.Civ.P. 56(e), and thus the district court properly ignored the assertion.