Jose L. ROY, Plaintiff,

v.

AMOCO OIL COMPANY, Defendant.

No. 89–6220–CIV.

United States District Court,
S.D. Florida.

April 18, 1990.

Thomas Pilacek, Longwood, Fla., for plaintiff.

Charles Burr, Tampa, Fla., for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

PAINE, District Judge.

This matter comes before the court upon the Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). A party seeking summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *American Viking Contractors, Inc. v. Scribner Equipment Co.,* 745 F.2d 1365, 1369 (11th Cir.1984).

Once the moving party has sufficiently supported the motion, the party opposing summary judgment must come forward with significant probative evidence demonstrating the existence of a triable issue of fact. *Ferguson v. National Broadcasting Co.,* 584 F.2d 111, 114 (5th Cir.1978). Regarding the opposing party's shifted burden, the *Anderson* Court said:

> [A] party opposing a properly submitted motion for summary judgment may not rest upon mere allegation or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial.

*Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

The question for the court is "not whether there is literally no evidence, but whether there is any evidence upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson* at 252, 106 S.Ct. at 2512 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872) [emphasis in original].

The court may enter summary judgment against the non-moving party if he fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "Failure to establish an essential element necessarily renders all other facts immaterial, leading to the conclusion that there is no genuine issue of material fact." *Id.* The moving party is then entitled to judgment as a matter of law because the opposing party has failed to establish an essential element with respect to which he or she has the burden of proof. *Id.*

Finally, all evidence and reasonable factual inferences drawn therefrom must be viewed against the party seeking summary judgment. *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1176 (11th Cir.1985).

## FACTUAL BACKGROUND

The Plaintiff alleges in this action that his employment was terminated in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*

Jose Roy began working for Amoco Oil Company on July 15, 1955. He was continuously employed by Amoco from July 15, 1955 until January 1, 1988. In 1965, Roy was promoted to a managerial position

with Amoco. During the course of his managerial career with Amoco, Roy's title was given various names, including Sales Representative, Marketing Representative, and Territory Manager. However, despite these title changes, his job duties remained essentially the same since 1972.

Under the title of Territory manager, Roy was responsible for acting as a liaison between Amoco and the retail petroleum dealers who operated within his assigned territory. His job was to respond to complaints from the retail dealers and to make sure that Amoco's products were marketed and sold by the retail dealers in accordance with the company's policies.

In September, 1985, Roy had quadruple by-pass heart surgery. Roy was unable to return to work until mid-November, 1985; he admits that his job performance was affected by the surgery for at least four months. Through his deposition, Roy indicated that, after his surgery, he tired faster and was "taking it easier." *See, Roy Deposition* at 24. As a result of his medical problems, Roy indicated that there was a lack of supervision of the retail dealers in his area and, "things were kind of getting out of control." *See Id.* at 25.

In December, 1985, at a social function following a district sales meeting, Roy requested information about early retirement eligibility and benefits from Kent Carson, Amoco's Manager of Human Resources for East Zone Marketing.

In early June, 1986, Charles Fuqua, Field Sales Manager and Roy's immediate supervisor, met with Roy and criticized several areas of his work. Specifically, Fuqua expressed concern about Roy's possible drinking when driving a company car, his personality conflicts with three retail dealers in his territory, and Roy's failure to attend to certain administrative tasks.

In late June, 1986, in response to Roy's request, Kent Carson called Roy with the figures on his retirement. Based upon the information provided to him by Carson, Roy told him that he could not afford to retire. Roy felt that Carson was pressuring him during the telephone conversation. Carson made a second call to Roy regarding early retirement. During that call, Carson indicated to Roy that he wanted to set up a meeting to discuss the possibility of early retirement. Despite Roy's insistence that he did not want to retire, Carson said he would fly down to meet with him. Roy asked Carson "Why do you want to get rid of me?" Carson replied, "I need the room." Roy admits that to him this meant he would be replaced. *Roy Deposition* at 45.

On August 25, 1986, Roy and Carson met as previously scheduled. At the meeting, which lasted several hours, Carson presented a severance pay and retirement benefit package to Roy. Roy portrays the meeting as an adversarial one in which Carson pursued Roy "persistently throughout the night" to retire and Roy remained "adamant about not retiring." *Roy Deposition* at 121.

When Carson's efforts to convince Roy to retire proved unsuccessful, he summoned Charles Fuqua, Roy's supervisor, to join the meeting. Fuqua presented Roy with a letter signed by Fuqua criticizing Roy's job performance. Roy inquired as to the meaning of the letter; he was told that the letter was a probationary notice. At that point Roy said to Carson, "I guess if I don't retire, I'll be fired." Carson said "yes." *Roy Deposition* at 47. Roy testified that he was pretty upset by the events at the meeting. Additionally, he said that the actions of Carson and Fuqua during the meeting further convinced him that he was being victimized by age discrimination. *Roy Deposition* at 49–50. In fact, according to Roy's deposition testimony, this meeting was "the strongest indication" of Amoco's alleged age bias toward him. *Roy Deposition* at 120–121.

Shortly after this meeting, Roy's second-level supervisor, T.R. Weaver, telephoned Roy and advised him that Amoco was sending him an "acceptance of retirement" letter; if he desired to retire, the letter had to be signed and returned to Amoco within 24 hours. Roy signed the letter because, as he said in his deposition, "I turned down retirement. But I couldn't turn down forced retirement." *Roy Deposition* at 55.

According to Roy, at that time, he felt he had no alternative. *Id.*

On *September 24, 1986,* Roy signed the letter and returned it to Amoco. The effect of signing the letter was that Roy requested early retirement effective January 1, 1988. Specifically, the "acceptance of retirement" letter said:

I, Jose Roy, agree to continue employment with Amoco Oil Company, assisting on the EPICS implementation in the State of Florida. I also request and agree to severance/retirement effective January 1, 1988.

Additionally, the letter stated that:

*Upon acceptance of this letter, severance/retirement is granted* effective January 1, 1988. The severance/retirement benefits in effect January 1, 1988, will apply.

*See* Defendant's Motion for Summary Judgment, Exhibit B [emphasis added].

In anticipation of his early retirement, Roy was transferred in late September, 1986 from the position of Territory Manager to a position in which he was responsible for training Amoco's retail dealers in the use of a new electronic sales processing system. He remained in the new position until the termination of his regular employment with Amoco.

Seven months after Roy signed the letter requesting early retirement, in April, 1987, he received a "work force reduction program" letter. That letter explained that in order to receive severance incentive benefits under the program, employees were required to release all claims against Amoco. Roy testified in his deposition that at that time it was "obvious" to him that the severance incentive program was part of an overall attempt by Amoco to reduce the company's age profile. *Roy Deposition* at 76.

Thereafter, Roy received further information from Carson about the program. Roy testified that he understood that if he elected to participate in the program, he would receive severance payments equivalent to 70 weeks salary based on his 32 years of credited service with Amoco. He also understood that in return for his sev-erance benefits, he would be required to give up his right to sue Amoco. *Roy Deposition* at 78. Subsequently, Roy and Carson engaged in an adversarial battle over Roy's signing the "employee termination agreement." At one point during this meeting, Roy told Carson that he could go to the EEOC about this program. Carson agreed that, in fact, he could do that.

In the interim, another Amoco official offered Roy a temporary arrangement whereby Roy would work for Amoco as an independent consultant beginning on January 1, 1988. Roy would work without benefits, at an hourly wage, doing the same job he was doing as ESP Coordinator through October, 1988. *Roy Deposition,* at 97–98.

It is significant that, although Roy had not yet signed the "employee termination agreement," there is no indication in the record that Amoco had changed its course regarding the retirement situation. The court finds that the extended employment as a consultant would commence after Roy's scheduled retirement. In fact, pursuant to the letter he signed on September, 1986 Roy was still scheduled to formally retire on January 1, 1988.

On *October 27, 1987,* Roy and Carson had another meeting. At that time, Carson told Roy that Amoco's agreement to hire him as a consultant was contingent upon his acceptance of the Work Force Reduction Program. *Roy Deposition* at 103. On that same day, Roy signed the "Employee Termination Agreement".

Following his formal retirement, on January 1, 1988, Roy received severance payments totalling $71,207.00. He has not tendered any of these monies back to Amoco. Thereafter, from January 1, 1988 until October 1, 1988, Roy worked for Amoco as an independent consultant.

Roy filed his administrative charge of age discrimination with the EEOC on August 1, 1988. At his deposition, Roy testified that he waited deliberately until that date to file the charge because he was fearful that Amoco might terminate its in-

dependent consulting agreement with him. *Roy Deposition* at 106.

## PROCEDURAL BACKGROUND

Defendant Amoco has moved for summary judgment suggesting that there is no genuine issue of fact as to the following three separate grounds:

(1) That Roy's charge of age discrimination filed with the Equal Employment Opportunities Commission (EEOC) on August 1, 1988 was untimely.

(2) That Roy executed an enforceable release of all legal claims against Amoco, including those alleging age discrimination.

(3) That Roy has not rescinded the release by tendering back to Amoco the severance payments that he received in exchange for executing the release.

The court finds that Amoco has not argued that it is entitled to summary judgment on the merits of Roy's claim. Accordingly, the court need not employ the traditional burdens and standard of review for an age discrimination case. Rather, the court's analysis shall be limited to the only issues to which the Defendant has moved for summary judgment.

Having determined that the first ground, the timeliness of the EEOC charge, is dispositive of the motion for summary judgment, the court will address it first.

## ANALYSIS OF THE TIMELINESS OF THE EEOC CHARGE

The court finds that the Defendant, the party seeking summary judgment, has successfully borne the burden of demonstrating that there is no genuine dispute as to any material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *American Viking Contractors, Inc. v. Scribner Equipment Co.,* 745 F.2d 1365, 1369 (11th Cir.1984).

The Defendant having sufficiently supported the motion, the burden then shifts to the Plaintiff, the party opposing the motion, to come forward with significant probative evidence demonstrating the existence of a triable issue of fact. *Ferguson v. National Broadcasting Co.,* 584 F.2d 111, 114 (5th Cir.1978). In the present case, when the burden shifted to the Plaintiff, he admitted in his brief in opposition to the motion that he "concedes that the facts set forth in Amoco's brief in support of its Motion for Summary Judgment are generally accurate, but contends that in some respects ... are set forth in a misleading fashion." Accordingly, the court has reviewed the record and determined that no genuine issue of material fact exists as to these issues.

However, the moving party is also required to show that he is entitled to judgment as a *matter of law. See* Fed.R.Civ.P. 56(c).

Having determined that the record supports the existence of generally undisputed facts as outlined above, the court's task is to apply the law to these facts to determine the timeliness of the Plaintiff's claim with the EEOC. *See American Hotel Management Associates Inc. v. Jones,* 768 F.2d 562, 568 (4th Cir.1985) (limitations issue should be resolved as a matter of law if underlying facts are undisputed.)

The parties agree that Section 7(d)(2) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. § 626(d)(2) provides that in a deferral state such as Florida, an administrative charge must be filed within 300 days after the "alleged unlawful practice occurred." In fact, such filing is a prerequisite to filing a civil action under the ADEA. *McClinton v. Alabama By–Products Corp.,* 743 F.2d 1483 (11th Cir.1984), *citing Coke v. General Adjustment Bureau,* 640 F.2d 584 (5th Cir.1981).

The Plaintiff contends that under the facts of this case, the Defendant is not entitled to summary judgment on this issue for three reasons. First, the Plaintiff contends that the Defendant waived its right to assert the statute of limitations defense in this case as it was not affirmatively raised in the original answer. Second, the Plaintiff contends that the alleged violation of the ADEA occurred on October 27, 1987 and, therefore, the EEOC charge was filed in a timely manner. Finally, the Plaintiff

argues that Amoco's alleged ADEA violation is continuing in nature.

### 1. *Did Amoco's Failure to Raise the Defense in its Answer Constitute Waiver of the Defense?*

In *Herman v. National Broadcasting Company, Inc.*, 569 F.Supp. 282 *aff'd in part, reversed in part on other grounds*, 744 F.2d 604, *cert denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1984), the court was called upon to determine if defendants in an age discrimination case waived their rights to raise the statute of limitations by allegedly failing to raise or preserve the defense by answer or otherwise. *Herman*, 569 F.Supp at 287. The court determined that since the Defendant's answer denied that Plaintiffs complied with all procedural prerequisites and that this same denial was restated as an affirmative defense, that the "plaintiffs were properly appraised of [the defendant's] concerns for the jurisdictional basis of the suit. *Id.* at 287.

■ In the present case, Paragraph 8 of the Plaintiff's Complaint states that "Roy has performed all conditions precedent to bringing this action." At Paragraph 8 of the Defendant's Answer, it states that "[i]n response to Paragraph 8 of the complaint, Defendant denies the allegations therein. Additionally, like in the *Herman* case, the plaintiffs were properly appraised of the defendant's concern for the jurisdictional basis of the suit as Defendant Amoco raised as an affirmative defense that this court lacks jurisdiction of Plaintiff's complaint.

■ Additionally, it has been held that a statute of limitations defense may be raised for the first time in a motion for summary judgment, absent a showing of prejudice by the Plaintiff. *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984). In the instant case, the Plaintiff has made no showing of any kind of prejudice beyond that permitted under the law.

The court is satisfied that the Defendant, through its answer, sufficiently raised the issue of the Plaintiff's failure to meet the prerequisites to suit in this court. Accordingly, the court finds that the Defendant did not waive his right to raise the statute of limitations as an affirmative defense.

### 2. *On What Date Did the "alleged unlawful practice occur" for the Purposes of the ADEA Statute of Limitations?*

In the Supreme Court case of *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Court concluded that the limitations period commenced no later than when the college announced its official position on tenure, not when the employment contract expired.

The Eleventh Circuit discussed *Ricks* in *Calhoun v. Federal National Mortgage Association*, 823 F.2d 451 (11th Cir.) *cert denied* 484 U.S. 1078, 108 S.Ct. 1058, 98 L.Ed.2d 1019 (1988). In that case, the court addressed the issue of when the statute of limitations period under the ADEA began to run. The court determined that the issue of timeliness turned on when the period for filing began. Quoting *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the Eleventh Circuit determined that

> The proper focus for purposes of establishing the time at which the limitations period begins to run 'is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful.'

*Calhoun* at 455, *quoting Chardon*, 454 U.S. at 8, 102 S.Ct. at 29 [emphasis in original]. The court went on to hold that the alleged illegal acts were the employer's decision to terminate and the notice of that decision to the Plaintiff. *Id.* at 456.

■ In the present case, the court finds that after the Plaintiff's initial meeting with Carson and Fuqua he had at least constructive knowledge that he could either accept early retirement or be fired.[1] Addi-

---

1. In fact, the Plaintiff has testified that he had actual knowledge of this fact. However, viewing the facts in the light most favorable to the Plaintiff, the court will assume only constructive knowledge at this point.

tionally, on September 24, 1986, when Roy signed the request for early retirement, allegedly against his will, he certainly had unequivocal notice of Amoco's intention to terminate his employment on January 1, 1988. Accordingly, under the above-stated authority, the court finds that the date for calculating the commencement of the statute of limitations period of the ADEA is September 24, 1986. Once Roy executed the severance/retirement statement accepting Amoco's offer, the termination of his employment through retirement was "a delayed, but inevitable consequence." *See Calhoun* at 456. *Ricks*, 101 S.Ct. at 504.

As noted above, the Plaintiff filed the EEOC charge on August 1, 1988, almost two years after the date upon which the court has determined the "alleged unlawful practice occurred." Therefore, pursuant to 29 U.S.C. § 626(d)(1), the Plaintiff's EEOC charge was not timely filed. Accordingly, the Plaintiff's present action case is time barred.

### 3. *Is the Alleged Violation a Continuing Violation Under the ADEA?*

■ Again the Supreme Court offers guidance on the resolution of this final issue. In *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the Court held that a continuing violation cannot be established merely by allegations that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination. Rather, the court held that "the emphasis should not be placed on mere continuity; the critical question is whether any present violation exists." *Id* 97 S.Ct. at 1889. *See also Ricks, supra.*

The Eleventh Circuit was called upon to review the timeliness of an EEOC claim which was alleged to be continuing in nature in *Burnam v. Amoco Container Co.*, 755 F.2d 893 (11th Cir.1985). The court determined that

a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act. Otherwise, a

potential plaintiff could always circumvent the limitations by reapplying for employment. A simple request for reinstatement seeks to redress the original termination.

*Id* at 894. The court finds that Roy's continuing requests to continue in employ with Amoco failed to reactivate the alleged discriminatory act for the purposes of the statute of limitations. Accordingly, the alleged violation was not continuing in nature.

In view of the foregoing, the court finds that there are no factual issues in dispute and that the Defendant must prevail as a matter of law. Therefore, it is

ORDERED and ADJUDGED that the Motion for Summary Judgment is hereby GRANTED. The clerk of the court is instructed to enter final judgment against the Plaintiff and in favor of the Defendant. Further, it is

ORDERED and ADJUDGED that the court does not find sufficient cause to award attorneys fees in this case and each party shall, therefore, bear its own fees and costs.

DONE and ORDERED.