61 F.3d 906
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Shee HO, Plaintiff/Appellant,
v.
ILLINOIS POWER COMPANY, Clinton Power Station, Defendant/Appellee.
 No. 94-2273.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 6, 1995.*
Decided July 7, 1995.
 
 Before BAUER, RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Shee Ho appeals the district court's grant of summary judgment in favor of the defendant, Illinois Power Company. Ho brought suit under Title VII alleging that he was terminated on the basis of his national origin.[1] See 42 U.S.C. Sec. 2000(e).
 
 
 2
 We review a grant of summary judgment by considering all factual issues in the light most favorable to the nonmoving party and determining de novo whether there exists any genuine issue of material fact requiring submission of the case to the finder of fact or whether judgment as a matter of law was appropriate. Fed. R. Civ. P. 56(c); Colburn v. Trustee of Indiana Univ., 973 F.2d 581, 585 (7th Cir. 1992). Moreover, "[t]his standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993).
 
 
 3
 We conclude that there is no issue of material fact in this case and that defendant is entitled to judgment as a matter of law. For the reasons stated by the district court in the attached order, we AFFIRM.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 4
 Shee Ho, Plaintiff,
 
 
 5
 vs.
 
 
 6
 Illinois Power Company, Defendant.
 
 NO. 92-2237
 ORDER GRANTING SUMMARY JUDGMENT
 
 7
 BAKER, District Judge.
 
 
 8
 This case arises under Title VII of the Civil Rights Act, 42 U.S.C. Sec.2000e, and is before the court on the defendant's motion for summary judgment. The plaintiff, Shee Ho, formerly an Electrical Staff Engineer for the defendant, Illinois Power Company, seeks reinstatement and lost wages. The defendant says it terminated the plaintiff's services because the plaintiff cheated on the examination given at the end of a safety training course. The plaintiff says he was terminated because he is of Chinese ancestry. The court now grants summary judgment in favor of the defendant and against the plaintiff.
 
 
 9
 Shee Ho began working as a staff engineer at the defendant's Clinton nuclear power plant in May 1985. Construction of the plant had begun in 1975 and, to say the least, had been a troublesome project for Illinois Power. The plant was subject to oversight by the Nuclear Regulatory Commission (NRC). That oversight became especially intense between the time leading up to the issuance of a low power license in September 1986 and the grant of a full power license in 1987. To meet the oversight demands of the NRC, and because of the need for scrupulous honesty and full accountability in dealing with all aspects of nuclear power, Illinois Power management adopted a policy demanding strict personal integrity by its employees. The policy was to promote completely accurate records and logs in connection with the operation of the Clinton plant.
 
 
 10
 As part of his regular duties, the plaintiff was required to perform safety evaluations. The NRC was especially interested in safety evaluations by the utility since a strong program of self-evaluation was evidence of readiness for operation. Illinois Power also undertook extensive training programs for its Clinton employees to meet NRC requirements and to ready the employees to operate a nuclear plant.
 
 
 11
 In August 1986 in preparation for fuel loading, the plant was locked down. Only those persons with proper clearance after a background investigation could enter the plant unescorted. On September 9, 1986, the plaintiff was granted interim access status for ninety days until his background check could be completed.
 
 
 12
 On September 19, 1986, the plaintiff was required to take a Safety Evaluation Course taught by a specialist. The course was to be followed by a written examination that was to be "closed book". When the lecture was finished the instructor passed out the written examinations to the participants. One participant asked if the test was "closed book" and the instructor answered emphatically that it was. It is noteworthy that Ho had taken five other courses at the plant and that each of them concluded with a "closed book" examination.
 
 
 13
 Two people, another student and the instructor's supervisor, saw Ho using the course materials to answer a question on the test. The cheating was reported and disciplinary action was taken against Ho, who was dismissed by direction of Jon Greene, head of Nuclear Safety Engineering, and Donald Hall, the vice-president in charge of the Clinton plant.
 
 
 14
 In his deposition, the plaintiff admitted that he used the course materials to answer the test questions but said it did not matter because if he failed he could take the test again. He testified that he did not care whether he passed the test or not. That admission is inconsistent with Illinois Power's legitimate expectations of an engineer charged with the responsibility of making safety evaluations.
 
 
 15
 The plaintiff argues that his cheating on the examination was merely a pretext for his dismissal and that the real reason was that he was Chinese. Ho points to the case of another engineering employee, Mesbah Ahmed, who was caught in June 1986 asking another student for the answer to a training test question and was reprimanded but not discharged. Illinois Power points out that the Ahmed case did not involve Greene or Hall and that when Greene discovered what had happened in the Ahmed case, Greene tried to take further disciplinary action against Ahmed but was told he could not because the case was closed. Greene later blocked approval for Ahmed to have unescorted access clearance to enter the Clinton plant.
 
 
 16
 Ho filed a complaint with the Illinois Human Rights Commission and the Commission issued a decision in favor of Illinois Power. Ho then sought review by the Equal Employment Opportunities Commission and that Commission ruled that the evidence did not support a violation of Title VII. This litigation followed.
 
 
 17
 In response to the defendant's detailed submissions in support of its motion, the plaintiff has filed two unverified "affidavits" and memoranda. Fed.R.Civ.P. 56(e) says in pertinent part: "[A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." None of the plaintiff's submissions comply with the requirements of the rule.
 
 
 18
 It is the plaintiff's position that the reason advanced by Illinois Power for his discharge -- his cheating, is a pretext to cover up the real reason he was fired -- he is Chinese. In support of this position the plaintiff offers only his own ipse dixit argument. No evidence shows that Hall, the vice-president who approved of Ho's discharge, even knew that Ho was Chinese. There is no evidence that Greene ever expressed any sentiment about Ho's or anyone else's national origin. The only evidence about Greene is that he was very concerned about Ho's cheating and also about Ahmed's cheating.
 
 
 19
 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir. 1984), cert. denied, 470 U.S. 1028 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." Black v. Henry Pratt Co., 778 F.2d 1278, 1281 (7th Cir. 1985). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1363 (7th Cir. 1988) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).
 
 
 20
 Following the McDonnell Douglas paradigm, and assuming, for the sake of argument that the plaintiff has made out a prima facie case of discrimination, and to reach to a dispositive point in the case, the plaintiff has the burden of coming forward with evidence to show that the proffered non-discriminatory reason for discharge is a pretext. McDonnell douglas v. Green, 411 U.S. 792, 804-05 (1973). Put another way, the plaintiff has to produce evidence that the real reason for the discharge was discrimination. St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2747-48 (1993). Failure by the plaintiff "to show that the employer's proffered reasons for the adverse act were pretextual" should lead to summary judgment for the employer. Komel v. Jewel Companies, 874 F.2d 472, 473 (7th Cir. 1989) (citing Oxman v. WLS-TV, 846 F.2d 448, 456 (7th Cir. 1988)).
 
 
 21
 The single point upon which the plaintiff relies to show pretext is the defendant's failure to discharge Mesbah Ahmed, another Clinton plant engineer who cheated on a training examination. This point falls flat when examined. Hall and Greene, who discharged Ho, had nothing to do with the Ahmed case. In fact Greene, who assumed his position as head of Nuclear Safety Engineering after the Ahmed case was closed, tried unsuccessfully to renew the case to discipline Ahmed. The Ahmed case is not supportive of Ho's claim. EEOC v. Flasher, 986 F.2d 1312, 1319-20 (10th Cir. 1992) (even disparate treatment must be shown to be intentional discrimination based upon employee's protected class characteristics); Cooper v. City of North Olmstead, 795 F.2d 1265, 1271 (6th Cir., 1986) (district court improperly failed to consider different management as possible nondiscriminatory reason for disparate treatment) (citing Tate v. Weyerhauser, 723 F.2d 598, 605-06 (8th Cir. 1983), cert. denied, 469 U.S. 847 (1984). To be persuasive, the Ahmed case would have to show that management consciously overlooked or condoned prior similar conduct by persons not in Ho's class. Jones v. Gerwens, 874 F.2d 1534, 1542 (11th Cir. 1989). The Ahmed case does not support that proposition.
 
 
 22
 The question here is not whether Hall and Greene were right or wrong or just or unjust in terminating Ho's employment for cheating. The inquiry is whether they were motivated by discriminatory reasons based upon Ho's national origin. Freidel v. City of Madison, 832 F.2d 965, 973 (7th Cir. 1987); Pollard v. Rea Magnet Wire Co., Inc., 824 F.2d 557, 559 (7th Cir.), cert. denied, 484 U.S. 977 (1987). No rational person could reach that conclusion based on this record.
 
 
 23
 The clerk is directed to enter summary judgment in favor of the defendant, Illinois Power Company, and against the plaintiff, Shee Ho. The parties shall bear their own costs. All other pending matters are rendered moot by this order.
 
 Enter: this 9th day of May, 1994
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Ho is Chinese